UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 16-CV-21658-WILLIAMS

HARRIUS JOHNSON,

      Plaintiff,

v.

MIAMI-DADE COUNTY,

      Defendant.

_____/

### MIAMI-DADE COUNTY'S MOTION FOR FINAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant MIAMI-DADE COUNTY (the "County") files this motion for entry of final summary judgment in its favor against Plaintiff HARRIUS JOHNSON. Plaintiff was terminated for violating the County's rules against failure to provide an accurate home address, insubordination, disrespect, unprofessionalism, conduct unbecoming, and after having received numerous disciplinary actions and counseling over the course of his employment. Plaintiff's Amended Complaint is composed of eight separate counts: Counts I and II for "unpaid wages" under both the FLSA and Florida law; Counts III and IV for racial discrimination and retaliation under 42 U.S.C. § 1983; and Counts V-VIII for racial discrimination and retaliation under both Title VII and the Florida Civil Rights Act.

### ARGUMENT

### I.    THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON ANY REMAINING PAYMENT AMOUNTS IN COUNTS I & II OTHER THAN ACTUAL WAGES.[1]

In the Amended Complaint, Plaintiff seeks only to recover for unpaid wages and unused paid time off. (Pl. Am. Compl. [D.E. 18] ¶ 87.) In his Amended Statement of Claim, however,

_____

[1] On September 28, 2017, the County served upon Plaintiff a legally-sufficient Offer of Judgment to dispose of the only remaining claim for actual wages in Counts I & II. *See* Notice of Serving Offer of Judgment [D.E. 64].

Plaintiff stated that he is also owed four other types of payments: (1) a uniform allowance, (2) holiday leave, (3) annual leave, and (4) a reimbursement for health insurance premiums.  (Pl. Am. Stmt. of Claim [D.E. 14] ¶¶ 5-11.)  In the Court's Order on the County's motion to dismiss, the Court agreed with the County and concluded that Plaintiff's benefits (annual leave and holiday compensation) were not recoverable under the FLSA or Florida law.  (Order [D.E. 48] at 4, n.2.)  As to the other two amounts, the uniform deposit and insurance payout, the Court correctly noted that Plaintiff makes no claim for these amounts in the Amended Complaint.  *Id.* However, the Court declined to address these amounts at the motion to dismiss stage.  *Id.* [2]

Now, at the summary judgment stage, it remains undisputed that the only amount which survived dismissal and remains in Counts I and II is Plaintiff's claim for the amount of his final paycheck, consisting of ***actual wages*** for 80 hours with a net pay of $2,557.64.  (County Facts ¶ 12.) Plaintiff actually ***concedes*** this point in his Amended Statement of Claim, where he limits his liquidated damages to $2,557.64, the amount of his actual wages.  (*Id.*)  Because the Amended Complaint is not entirely clear, however, and in an abundance of caution, the County moves for summary judgment on any remaining amounts in Count I other than Plaintiff's actual wages of $2,557.64.

Indeed, any purported claims for a uniform deposit and insurance payout must be dismissed as a matter of law.  The Fair Labor Standards Act dos not confer any additional

---

[2]    Although the Court has stated that Johnson's uniform "deposit" and insurance payouts do not arise under the CBA, the undisputed evidence now establishes that they do, and therefore, Plaintiff failed to exhaust the grievance and arbitration procedures under the CBA.  *See* (Order [D.E. 48] at 7).  To clarify, both parties may have incorrectly referred to the payment as a uniform "deposit."  The payment was actually uniform "allowance" under Article 36 of the CBA for the maintenance of uniforms.  *See* (Ex. 29-Cnty. Resp. to Pl. Am Stmt. of Claim [D.E. 16-1] at p. 11 of 12); (Ex. 6-Clodfelter Affidavit.)  Moreover, the insurance payout represents the County's contribution to a health care insurance benefits plan, which is a benefit that has to be negotiated with the Union as a matter of law and is thereby incorporated into the collective bargaining agreement.  *See* (Ex. 6-Clodfelter Affidavit.)  Thus, both the uniform allowance and health insurance refund are both arbitrable under the collective bargaining agreement ***and*** are not considered wages under the FLSA.

2

benefits to employees other than establishing a minimum wage and a "time-and-a-half" pay structure for overtime hours actually worked. *See* 29 U.S.C. § 201-219. Other benefits and expenses which might accrue to employees, like the benefits and expenses Plaintiff may be attempting to recover in this lawsuit, are not covered under the FLSA statute as set forth below:

> § 207. Maximum Hours
> \*          \*          \*
> (e) "Regular rate" defined
>> As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, ***but shall not be deemed to include--***
>> \*          \*          \*
>>> (2) ***payments made for occasional periods when no work is performed due to vacation, holiday,*** illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or ***other expenses, incurred by an employee*** in the furtherance of his employer's interests and ***properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment***;
>>> \*          \*          \*
>>> (4) ***contributions irrevocably made by an employer*** to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or ***health insurance or similar benefits for employees***;
>>> \*          \*          \*

Fair Labor Standards Act, 29 U.S.C. §§ 207(e) (emphasis added). The bolded portions above are the sorts of "benefits" and "expenses" the FLSA ***does not*** cover and yet they are the exact things for which Plaintiff may be seeking to recover under Counts I and II of his Amended Complaint (e.g., the uniform allowance and insurance premiums).

Specifically, it is undisputed that ***uniform reimbursement pay*** is an example of an expense that is excluded under Section 207(e).  The Department of Labor, in its interpretative regulations, states:

> (b) Illustrations. Payment by way of ***reimbursement for the following types of expenses will not be regarded as part of the employee's regular rate***:
>> \*\*\*
> (2) ***the actual or reasonably approximate amount expended by an employee in purchasing, laundering or repairing uniforms or special clothing which his employer requires him to wear.***

3

29 C.F.R. § 778.217(b)(2) (emphasis added); (County Facts ¶¶ 13-15.)

Moreover, it is undisputed that the County's contribution to Plaintiff's ***health insurance benefits plan*** satisfies the requirements of 29 C.F.R. § 778.215 and thus Section 207(e)(4). (County Facts ¶¶ 13-15.) *See*, *e.g.*, *Local 246 Utility Workers Union of America v. Southern California Edison Co.,* 83 F.3d 292 (9th Cir. 1996) (If employer meets requirements of making irrevocable contributions to trust, then those contributions will not be added to regular pay rate for purposes of overtime provisions of Fair Labor Standards Act (FLSA) on theory that they are a form of indirect bonus to the worker.)

Simply put, there can be no argument that reimbursement of a uniform deposit or unused insurance payouts are "wages" under the FLSA. Moreover, these amounts are matters falling under the collective bargaining agreement, and are thus subject to the grievance and arbitration procedures that Plaintiff failed to utilize before filing suit. Accordingly, the County is entitled to summary judgment that these payments are not actionable in this case.

## II.  THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1983 *MONELL* CLAIMS IN COUNTS III AND IV.

In the Court's Order on the County's motion to dismiss, the Court concluded that Plaintiff "does not sufficiently allege an act by a final policymaker," but Plaintiff's § 1983 *Monell* claims could nevertheless survive dismissal because Plaintiff had sufficiently pled a "custom or practice" of racial discrimination and retaliation based on some of his own "repeated experiences." Order [D.E. 48] at 7-11. The Court concluded that a municipal custom can actually be based solely on Plaintiff's own experiences, relying on *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1491 (11th Cir. 1991). *Id.* Even so, Plaintiff "cannot merely rely on the allegations in his complaint" to survive summary judgment on the *Monell* claims in Counts III and IV. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1281 (2016). As discussed below,

Plaintiff's mere allegations of his own "experiences" and subjective beliefs are insufficient to establish a genuine issue of material fact as to the existence of a custom or widespread practice of discrimination or retaliation.

To establish municipal liability under Section 1983, a Plaintiff must show that: (1) a constitutional right was violated; (2) the municipality had a custom or official policy that constituted deliberate indifference to her constitutional right, and (3) the policy or custom caused the violation of her constitutional right. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

### A.    No Constitutional Right or Federal Statutory Law Was Violated

Plaintiff's cause of action may only subsist if he can demonstrate that a violation of a constitutional right has occurred. If not, then there can be no *Monell* liability against the County. *Redd v. Conway*, 160 F. App'x 858, 861 (11th Cir. 2005) (affirming district court's entry of summary judgment for municipality on *Monell* claim based upon, among other things, an earlier finding that the plaintiff suffered no constitutional violation).

It is well settled that "analysis of a disparate treatment claim under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same." *Boone v. City of McDonough*, 571 F. App'x 746, 751 (11th Cir. 2014 (citing *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008)).  Specifically, the court uses the *McDonnell Douglas* test. *Collier v. Clayton Cty. Cmty. Serv. Bd.*, 236 F. Supp. 2d 1345, 1370–71 (N.D. Ga. 2002), *aff'd sub nom. Collier v. Clayton Cty*., 82 F. App'x 222 (11th Cir. 2003) (citing*, e.g., Pennington v. City of Huntsville,* 261 F.3d 1262, 1265 (11th Cir.2001)).  *See also Painter v. Fulton Cty., Georgia*, No. 1:08-CV-1989-TCB-RGV, 2010 WL 11493335, at *31 (N.D. Ga. Aug. 4, 2010), *report and recommendation adopted,* No. 1:08-CV-1989-TCB, 2010 WL 11493525 (N.D. Ga. Aug. 26, 2010) (granting summary judgment for the County on Plaintiff's employment retaliation claims

5

because "when § 1983 is used as a parallel remedy for Title VII violations, the analysis for both causes of action is the same.").

Thus, for the same reasons fleshed out in Section III below, Plaintiff has failed to establish the threshold requirement that he suffered a constitutional violation by way of discrimination or retaliation. For this reason alone, the County is entitled to summary judgment on Counts III and IV.

### B.      No County Custom or Practice

Though necessary, the presence of a constitutional violation is not sufficient to establish municipal liability of § 1983 claims. The plaintiff is further tasked with proving that the cause of the violation was an official policy or practice, which may only be established by proving either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). This Court has already ruled that this case does ***not*** involve an official policy because that Plaintiff "makes no claim that his termination was officially sanctioned or decreed by the County." Order [D.E. 48] at 8, n.3. Thus, summary judgment is warranted because Plaintiff also fails to establish a ***unofficial custom or widespread practice***, as discussed below.

"Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation," most plaintiffs must prove that their injuries were the result of an unofficial custom or practice. *Grech*, 335 F.3d at 1330. Further, Plaintiff can only proceed to demonstrate an unofficial custom or practice of the county "through the repeated acts of a final policymaker for the county." *Id.* at 1329. When a policy is not formally approved by a policymaker, municipal liability may result from the showing of a persistent and widespread practice that "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law," *City of St.*

6

*Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). In order for a practice to be sufficient to sustain municipal liability under section 1983, it must be sufficiently permanent and well settled such that it is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown,* 923 F.2d at 1481. Consequently, seemingly random, unrelated acts or isolated incidents have been insufficient to establish an official custom or to place final policymakers on constructive notice that such a custom potentially exists. *See, e.g., Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("***Eleven incidents*** . . . cannot support a pattern of illegality in one of the Nation's largest cities and police forces."); *Prieto v. Metro. Dade County*, 718 F. Supp. 934, 938-39 (S.D. Fla. 1989) (holding that "***four isolated incidents*** . . . *fall far short* of proving a persistent and widespread practice sufficient to establish a practice or custom") (emphasis added); *Buzzi v. Gomez*, 62 F.Supp.2d 1344 (S.D.Fla. 1999) *("[F]ive incidents* which occurred over a three-year period…, even if they were predicated on discrimination, are insufficient to substantiate the existence of a widespread custom violative of § 1983.").

### 1.   No Substantiated Complaints of Discrimination or Retaliation

In addition to requiring that the plaintiff provide a sufficient amount of past instances to establish a widespread custom, the Eleventh Circuit has also emphasized that ***the instances cited must have proven to be meritorious***. *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir. 1987) (finding that 10 prior ***complaints***, all of which were reviewed and found to be ***without merit***, did not place officials on constructive notice of past misconduct). "Indeed, the number of complaints bears no relation to their validity."  *Id.*  Because some complaints are likely without merit, mere recitation of the number of complaints filed against an employer does not suffice to prove an unconstitutional policy or custom. *See Grech*, 335 F.3d at 1330; *see also Anderson v. Jackson*, 2009 WL 2601388, *5 (M.D. Ala. Aug. 21, 2009); *Artiles v. Vitanza*, 2009 WL 2426259, *29 (D.N.J. Aug. 6, 2009). In fact, "[i]n judging the scope or existence of a pattern of constitutional

7

violations, the Court requires ***more than evidence of accusations***." *Doe v. Miami-Dade Cty.*, 797 F. Supp. 2d 1296, 1310 (S.D. Fla. 2011) (emphasis added).   Complaints alone are inconsequential.  *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force.") (citing *Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998) (emphasis added)). If a municipal custom of condoning discrimination or retaliation could be established merely by cataloguing all allegations of such misconduct over a several-year period, "then practically every large metropolitan police force, it would seem, could be targeted for liability." *See Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986).

Moreover, the Miami-Dade Police Department (the "MDPD") is a "large metropolitan police force" and the fact that some County employees or supervisors may have been the subject of complaints cannot serve to establish a County custom of condoning such behavior. *See id.*; *see, e.g., Doe*, 797 F. Supp. 2d at 1310 ("The Court does not find that 51 sexual misconduct claims over four years—in an extremely large police force, and including many claims that were never supported—establishes a widespread pattern of constitutional abuses directly caused by the County's failure to implement different screening measures.") (emphasis added).

Here, even though Plaintiff describes several incidents and complaints, most of which involve himself, none of them are sufficient as a matter of law.  *See* Order [D.E. 48] at 9-10 (describing a July 2013 incident involving Rachel Meadors use of the "n-word" towards members of the public, Plaintiff's claims of being disciplined differently from white officers, the County's allegedly biased investigations of his complaints against MDPD, his claim of being criminally detained for stealing, and his termination).  The fact that Plaintiff believes a *Hispanic* officer was disciplined differently for having two preventable police crashes, that Plaintiff made *unsubstantiated* complaints of discrimination during a three-year period, or that he believes the investigations into his complaints was biased, do not further a claim against the County for an

8

unofficial policy of discriminating against black police officers.  Plaintiff is unable to demonstrate that any of the incidents or complaints were found to be incidents involving constitutional violations, or were merely non-meritorious allegations of discrimination.

## 2.     No Involvement of the County's Final Policymaker

In alleging the existence of a particular policy or custom, the Plaintiff must also allege approval or awareness of the policy or custom *by a final policymaker*.  *See Pino v. City of Miami*, 315 F. Supp. 2d 1230, 1244 (S.D. Fla. 2004) (holding that "a plaintiff must identify an officially promulgated 'policy,' or an unofficial 'custom' or practice *shown through the decisions of a final policymaker*, that caused the plaintiff's (constitutional or federal statutory) injury." (emphasis added)).  It is axiomatic that a county or municipality can only act through its final policymakers for purposes of section 1983. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997).

The County's current charter plainly establishes that the Board of County Commissioners and the Mayor are the final policymakers for Miami-Dade County.[3]  The Supreme Court has

---

[3]     Prior to the County's adoption of the Strong Mayor Amendment in January 26, 2007, which effectively transferred the authority previously held by the County Manager to the County Mayor, Courts in the Southern District of Florida had consistently held that final policymaking authority for the County (including the County's police department) rested *solely* with the Board of County Commissioners (the "Board") and the County Manager.  *See Moore v. Miami-Dade County*, 502 F. Supp. 2d 1224, 1230 n. 4 (S.D. Fla. 2007) (Gold, J.) ("The final policy making authority for Miami-Dade County rests solely with the Board of County Commissioners or the County Manager.") (citations omitted); *Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213, 1223 (S.D. Fla. 2007) (Ungaro, J.) (holding that the "Board of County Commissioners is the lawmaking and policymaking body of Miami-Dade County," and therefore possess the final policymaking authority).  Since the change in the Charter, however, it is clear that the final policy making authority previously held by the County Manager now resides with the County Mayor.  Similar reasoning applies to department directors who, like the County Manager, are appointed by the Mayor and approved by the Board of County Commissioners. *See Cason Enters., Inc. v. Metro. Dade County,* 20 F. Supp. 2d 1331, 1344 (S.D. Fla. 1998) (Graham, J.) (holding that "the individual defendants in their capacities as department directors are not final policymakers because their decisions are subject to review"); *accord Gomez v. Metro Dade County,* 801 F. Supp. 674, 678 (S.D. Fla. 1992) (Highsmith, J.).

expressly held that such designations of authority are binding. *See Praprotnik*, 485 U.S. at 126 ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it."); *accord Wilson ex rel. Wilson*, No. 04-23250-CIV-MOORE, 2005 WL 3597737, at *8 (S.D. Fla. Sept. 19, 2005). Further, the identity of a government's final policymaker is a question of law, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), resolvable by the court on a motion to dismiss. *See, e.g., Wilson*, 2005 WL 3597737, at *8 (dismissing claims against the County because the plaintiff had failed to allege wrongdoing by the actual final policymaker).

For Miami-Dade County, the Southern District of Florida has consistently interpreted the County Charter to solely designate the Board of County Commissioners and the Mayor as 'policy makers' for the purposes of §1983 municipal liability. *See Moore v. Miami-Dade County*, 502 F.Supp.2d 1224, 1230 (S.D. Fla. 2007); *Buzzi*, 62 F.Supp.2d at 1359-1360; *Wilson*, 2005 WL 3597737 at **8-10. Therefore, Plaintiff would have to establish sufficient facts to evince that either the Board of County Commissioners or County Mayor endorsed, tacitly authorized or was deliberately indifferent to a policy or practice in order to sustain a *Monell* claim against the County.  Plaintiff is unable to do so.

Here, Plaintiff alleges only that he merely complained to the Board of County Commissioners and the County Mayor about unfair internal investigations, that he was unfairly targeted with criminal allegations, and disciplined in a retaliatory manner. Because his complaints do not establish a widespread custom or practice of ***sustained*** constitutional violations by County employees, there is no way the Commission or Mayor can be charged with knowledge of and the failure to stop them.  *Moore*, 502 F. Supp. 2d 1224, 1231-32 (S.D. Fla. 2007) ("Nowhere in the Complaint does the Plaintiff allege that the County's final policymakers ***knew and failed to stop an unofficial custom or practice*** as required by law to maintain a section 1983 claim against the County.").

10

In the employment context, the Eleventh Circuit has consistently rejected similar attempts to hold local government entities liable under § 1983 for the actions of individual officials. *See Scala*, 116 F.3d 1396 (holding that the City could not be held liable under § 1983 because the city manager and other supervisors were not the City's final policymakers with regard to their employment decisions); *Hill v. Clifton*, 74 F.3d 1150 (11th Cir. 1996) (holding that held that the city was entitled to judgment as a matter of law because the police chief and the other named supervisors were not the city's final policymakers with respect to their employment decisions); *Maschmeier v. Scott,* 269 F. App'x 941, 943 (11th Cir. 2008) (holding that a county sheriff's office could not be held liable for the sheriff's retaliatory discharge of an employee because the sheriff's actions were subject to the government's rules against retaliation and to meaningful review by others). *Accord, Alexander v. Fulton County*, 207 F.3d 1303, 1350 (11th Cir. 2000) (county sheriff was not final policymaker in employment matters because her decisions were confined by county rules); *Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997) (police chief not a final policymaker because her authority over employment matters was confined by city rules); *Gattis v. Brice*, 136 F.3d 724 (11th Cir. 1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional policy only when the policymaker approves a subordinate's decision *and the basis for it*." ) (emphasis in original).

This Court in particular has specifically (and repeatedly) held that *Miami-Dade County's* various department heads and other administrators do not have final policymaking authority over County employment matters. *Buzzi*, 62 F. Supp. 2d at 1359-60 (holding that the County could not be held liable under § 1983 for its police department director's and supervisors' allegedly discriminatory employment decisions because they did not have final policymaking authority over employment matters); *Lawrence v. Metro Dade County,* 872 F. Supp. 957, 964 (S.D. Fla. 1994) (holding that the County could not be held liable under § 1983 for the allegedly discriminatory acts of its police department director and other police supervisors, even though

11

the director had "the authority to establish specific employment policies for MDPD, [because] her decisions are clearly constrained by ordinances and resolutions passed by the Board of County commissioners . . . ."); *Jones v. Miami-Dade County*, 2005 WL 2456884, at \*6 (S.D. Fla. April 7, 2005) (holding that the County could not be held liable for the allegedly discriminatory and retaliatory actions of its Department of Corrections Director); *Gomez v. Metro Dade County*, 801 F. Supp. 674 (S.D. Fla. 1992) (holding that the County could not be held liable under § 1983 for the allegedly discriminatory employment decisions of its Housing and Urban Development Department Director because he did not have final policymaking authority over County employment matters); *Moreland v. Miami-Dade County*, 255 F. Supp. 2d 1034 (S.D. Fla. 2002) (holding that the County could not be held liable despite the plaintiff's assertion "that the County maintains several discriminatory policies and customs," because the County Charter makes clear that "it is the policy of the County to make employment decisions without regard to 'race . . . national origin . . . ancestry . . . and/or place of birth.'").

For the same reasons that this Court concluded that the County cannot be held liable under § 1983 for the employment decisions of individual County administrators and employees/agents in cases such as *Buzzi, Jones, Gomez, Lawrence*, and *Moreland*, it should also conclude that the County cannot be held liable for the individual employment decisions of MDPD Directed J.D. Patterson, Captain Tyrone White, Lt. Leonard Ricelli, or any of Plaintiff's other supervisors in this case. There is simply no evidence that the Commission or Mayor had knowledge of an unofficial custom or policy of discriminating against its employees, and thus, Plaintiff's injuries cannot have been inflicted by such practice(s).

### III.    THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS V, VI, VII & VIII.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin ..." 42 U.S.C. § 2000e-2(a)(1).  When a Title VII plaintiff's employment discrimination claim is based on circumstantial evidence, the Eleventh Circuit applies the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to evaluate the claim at the summary judgment stage.  *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016), *cert. denied sub nom. Trask v. Shulkin*, Case No. 16-513, 2017 WL 670223 (U.S. Feb. 21, 2017); *Dishman v. State of Florida Dep't of Juvenile Justice*, 659 F. App'x 552, 554 (11th Cir. 2016).

### A. Plaintiff Cannot Establish A *Prima Facie* Case Of Race Discrimination Or Retaliation.

Under the *McDonnell Douglas* framework, a plaintiff must first create an inference of discrimination through his *prima facie* case.  *Trask*, 822 F.3d at 1191.  To establish a *prima facie* case of race-based discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. *Maynard v. Bd. of Regents of Div. of Univ. Of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). In order to establish an adverse employment action in non-retaliation claims, a plaintiff must allege that he suffered "a serious and material change in the terms, conditions, or privileges of employment." *Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 484 (11th Cir. 2011) (quoting *Crawford*, 529 F.3d at 970-71).

The County does not dispute that Plaintiff satisfies the first and second prongs of the test because he is a member of a protected class (black), was qualified for the position that he held, and his disciplinary 5-days suspension and termination on January 29, 2016, were adverse

employment actions.[4]  Plaintiff, however, fails to satisfy the fourth prong of the *prima facie* test

by identifying a similarly-situated employee who was treated more favorably.

In determining whether employees are similarly situated for purposes of establishing a

*prima facie* case, it is necessary to consider whether the employees are involved in or accused of

the same or similar conduct and are disciplined in different ways. *Holifield v. Reno*, 115 F.3d

1555, 1562 (11th Cir. 1997) (citation omitted). When a plaintiff compares himself to employees

of a different classification, she must show that the employees are similarly situated to her "in all

relevant respects." *Trask*, 822 F.3d at 1192–93 (citing *Wilson v. B/E Aerospace, Inc.,* 376 F.3d

1079, 1091 (11th Cir. 2004)); *Moultrie v. Georgia Dep't of Corr.*, Case No. 15-14854, 2017 WL

3432380, at \*4 (11th Cir. Aug. 10, 2017) (citing *Holifield,* 115 F.3d at 1562). "We require that

---

[4]      However, none of the other alleged actions in the Amended Complaint constitute
"adverse employment actions" to sustain a Title VII discrimination claim (*i.e.*, unsatisfactory
monthly reports, removal from bid assignment, changed hours, being investigated for a shooting,
improperly investigating Plaintiff's complaint about Officer Meadors's conduct toward members
of the public, being transferred to another station, being criminally detained and interrogated for
stealing, etc.).  Indeed, these alleged actions are not "so substantial and material that [they alter]
the terms, conditions, and privileges of employment."  *See Medearis v. CVS Pharmacy, Inc.*, 646
F. App'x 891, 897–98 (11th Cir. 2016) (no adverse employment action where employee "offered
no evidence demonstrating that he experienced a tangible consequence such as a loss of pay or
benefits, further discipline, or denial of a promotion based on [his] reprimands," and "any
reduction in [his] store hours was 'at the very heart of' [the employer's] business judgment and
expertise because it challenged the company's ability to "allocate its assets in response to shifting
and competing market priorities.""); *Shepard v. United Parcel Service, Inc.*, 470 F. App'x 726
(11th Cir. 2012) (transfer from office to warehouse did not involve serious and material change
in terms, conditions and benefits of employment); *Davis v. Town of Lake Park Fla.*, 245 F.3d
1232, 1236 (11th Cir. 2001) (no adverse employment where employee received criticism and had
his Officer–in–Charge designation removed, but he "did not suffer any reduction in salary, loss
of benefits [or] denial of promotions...as a result of these instances."); *McGuire v. Miami-Dade
County*, 418 F. Supp. 2d 1354 (S.D. Fla. 2006) (requirement to perform "excessive" job duties
beyond the scope of employment position and denials of requests to attend training do not
constitute adverse action); *Collins v. Miami-Dade County*, 361 F. Supp. 2d 1362 (S.D. Fla. 2005)
(negative performance evaluation review that does not lead to loss in salary, ineligibility for
promotional opportunities, or formal discipline is not adverse action); *Madiedo v. Miami-Dade
County*, No. 99-1422, 2000 WL 1763845 (S.D. Fla. June 1, 2000) (denial of training that does
not cause denial of a promotion, bonus, or other benefit does not constitute adverse employment
action).

14

the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). While not always the case, differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination.  *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Moultrie*, 2017 WL at *4 (citing *Wilson,* 376 F.3d at 1092).

Of all the individuals Plaintiff identifies as comparators, each situation is readily distinguishable, both because none concerned another sergeant officer working for the same supervisors as Plaintiff, during the same time frame, who had a similarly extensive disciplinary history as Plaintiff, who had the same type of infractions as Plaintiff,  and who was not disciplined as severely as Plaintiff.  (County Facts ¶¶ 27-30.) The purported comparators had different police chiefs and different supervisors, and were each involved in different behaviors. (*Id.*) The Rule 56 evidence does not suggest that those comparators engaged in "the same or similar conduct" and the evidence in the file shows they were "disciplined in different ways."

Thus, Plaintiff has not presented viable comparators for his *prima facie* case or a pretext analysis. *See Maniccia*, 171 F.3d at 1368–69 ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."); *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n. 5 (11th Cir. 2001).  Without presenting evidence of a sufficient comparator,

Plaintiff cannot make out the fourth prong of a *prima facie* case of race discrimination under *McDonnell Douglas*.

Moreover, the record reveals no other evidence "that would allow a jury to infer intentional discrimination by the decisionmaker." *See Trask*, 822 F.3d at 1193 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.")); *see also Guerrero v. Miami-Dade Cty.*, No. 13-CV-21374, 2014 WL 2916447, at *4 (S.D. Fla. June 19, 2014) (Kathleen M. Williams, District Judge) (finding that Plaintiff failed to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination," where there was "no evidence that supervisors at the Property Appraiser's Office discussed Plaintiff's pregnancy in deciding to terminate her employment, and Plaintiff testified that she never heard …any… supervisors make any negative comments regarding her pregnancy").

Indeed, two of the individuals who decided to discipline Plaintiff were Director J.D. Patterson and Captain Tyrone White, both of whom are also African-American.  (County Facts ¶ 31-33.)  There is no evidence that Director J.D. Patterson, Captain White, or Lt. Ricelli had any discriminatory intent towards Plaintiff, not that Director Patterson, Captain White, or Lt. Ricelli ever made a negative comment about Plaintiff's race.  (*Id.*)  Because there is ***no*** evidence that race played ***any*** role in Plaintiff's suspension or termination, the County is entitled to summary judgment on Plaintiff's racial discrimination and retaliation claims under both Title VII and the FCRA.

**B.  The County Has Articulated Legitimate, Non-Discriminatory, Non-Pretextual Reasons For Suspending And Terminating Plaintiff**

In an action alleging employment discrimination under Title VII or the FCRA, the defendant may rebut plaintiff's *prima facie* case of employment discrimination simply by articulating at least one legitimate, non-discriminatory reason for its action.  *Trask*, 822 F. 3d at 1191.  "This intermediate burden" to produce a legitimate, non-discriminatory reason "is exceedingly light." *Holifield,* 115 F.3d at 1564.  Indeed, the employer's "burden is **production** not persuasion," and "the ultimate burden of persuasion remains at all times with plaintiff." *Watkins v. Sverdrup Tech, Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998).  Furthermore, "[t]he employer [may take adverse action against] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rehall Comms*., 738 F.2d 1181, 1187 (11th Cir. 1984).

Even assuming *arguendo* that Plaintiff could establish a *prima facie* case of racial discrimination (which he cannot for the reasons previously discussed), the County has proffered legitimate, non-discriminatory reasons for suspending and terminating Plaintiff, namely, his disrespectful, insubordinate, unprofessional, discourteous, and unbecoming conduct towards coworkers and superiors alike.  (County Facts ¶¶ 6-9, 16-26.) Before being terminated, he had amassed an extensive disciplinary history spanning many years with the Department (*Id.*) Thus, the County has more than satisfied its "exceedingly light" burden.  For this reason alone, and in the absence of any evidence of pretext, the County's motion for summary judgment should be granted.

17

### C.  No Evidence Of Pretext

Because the County has articulated legitimate, non-discriminatory reasons for Plaintiff's layoff, the burden shifts back to Plaintiff to produce evidence that Defendants' proffered reasons are a pretext for discrimination. *Mitchell v. City of LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) (citing *Watkins*, 153 F.3d at 1314).  "To demonstrate pretext, the plaintiff must show both that the employer's proffered reason is false, and that discrimination was the real reason." *Id.* "The plaintiff must meet the employer's reason head on and rebut it, and may not simply quarrel with the wisdom of the reason." *Id.* at 870-71.  "He may do this either directly by establishing that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the proffered reason is unworthy of credence." *Id.* at 871 (citing *Watkins,* 153 F.3d at 1314). "Under the latter approach, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason that a reasonable factfinder could conclude that it is unworthy of credit." *Id.*  Courts "are not in the business of adjudging whether employment decisions are prudent or fair," and are solely concerned with "whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Id.* (citing *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999)). "[Courts] do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (citing *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1501 (11th Cir.1991)). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Id.* (citing *Holifield,* 115 F.3d at 1565)).

Here, there is a complete lack of any evidence to support a pretext argument, and a complete lack of evidence pointing to anything other than Plaintiff's own misconduct as the motive for Plaintiff's suspension and termination.  To the contrary, the decisions were based on

legitimate, non-discriminatory reasons.  At best, Plaintiff may argue that the decision was not

"prudent or fair," but he cannot adduce any evidence to establish that the reasons were a pretext

for discrimination.  *See id.*; *see also Margolis v. Pub. Health Trust of Miami-Dade Cty.*, 89 F.

Supp. 3d 1343, 1353–54 (S.D. Fla. 2015) (Jose E. Martinez, District Judge) (finding that Plaintiff

failed to show pretext by arguing that Jackson offered "shifting explanations" for its decision to

terminate his employment, and concluding that "Jackson's business judgment—its decision to

restructure the medical directors in the cardiology department and hire new doctors—does not

concern this Court" because the Court does "not sit as a super-personnel department that

reexamines an entity's business decisions"); *Guerrero v. Miami-Dade Cty.*, Case No. 13-CV-

21374, 2014 WL 2916447, at *5 (S.D. Fla. June 19, 2014) (Kathleen M. Williams, District

Judge) (granting summary judgment where Plaintiff failed to meet her burden to show that the

County's proffered reason for her termination was pretextual); *Johnston v. Miami-Dade Cty.*,

Case No. 16-cv-20416-KMW, (S.D. Fla. July 21, 2017) (Kathleen M. Williams, District Judge)

(granting summary judgment where "Plaintiff has not cited to any evidence to 'cast sufficient

doubt on the defendant's proffered nondiscriminatory reasons to perm it a reasonable factfinder

to conclude that the employer's proffered legitimate reasons were not what actually motivated its

conduct.") (citing *Combs v. Plantation Patterns*,106 F.3d 1519, 1538 (11th Cir. 1997)).

## IV.  THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES AGAINST THE COUNTY

In the Amended Complaint, Plaintiff alleges in several places that he is entitled to an

award of punitive damages against the County, including Counts III-VIII.  (Pl Am. Compl. ¶¶

115, 124, 136, 144, 155, 163). Such damages are not recoverable against the County under §

1983, Title VII or the FCRA.  *City of Newport v. Fact Concepts, Inc.*, 453 U.S. 247 (1981)

(holding that municipalities were immune from punitive damages for § 1983 claims).  Moreover, punitive damages are not recoverable against a government, government agency, or political subdivision under Title VII and the FCRA.  *See* 42 U.S.C. § 1981a(b)(1); Fla. Stat. § 768.28(5).  Accordingly, the County is entitled to summary judgment on Plaintiff's claims for punitive damages.

### V.     THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS THAT FALL OUTSIDE THE SCOPE OF HIS EEOC CHARGES.

Plaintiff alleges that has timely satisfied all requisite conditions precedent.  Pl. Am Compl. ¶ 7.  In his motion to strike the County's defenses, however, Plaintiff admits facts that establish the basis for the County's defenses.  For example, the County's Defense #10 states that "the allegations in the Amended Complaint are outside the scope of and/or are inconsistent with Plaintiff's EEOC Charges."  Indeed, the Amended Complaint recounts events that took place as early as July of 2013.  Pl. Am. Compl. ¶¶ 11-15.  Yet, his first EEOC Charge states that the earliest date discrimination took place was August 29, 2013.  (*Id.* Ex. 1 [D.E. 18-1] at 1.) Thus, any discrete act that took place before August 29, 2013 is outside the scope of any EEOC Charge and is not properly exhausted.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.")  Accordingly, Plaintiff has lost the ability to recover for any act in July of 2013 – including complaints about Officer Rachel Meadors, and unsatisfactory monthly reports from Lt. Ricelli – because it was not put into an EEOC charge within 300 days thereafter, as required by law.

*Harrius Johnson v. Miami-Dade County*
Case No. 16-CV-21658-WILLIAMS/GARBER

## CONCLUSION

For the foregoing reasons, the County respectfully requests that the Court grant its motion for final summary judgment.

Dated:  October 2, 2017

Respectfully submitted,
ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY

By:  *s/Marlon D. Moffett*
Marlon D. Moffett (Florida Bar No. 21883)
Email:  mdm2@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, Florida 33128
Telephone:  (305) 375-5151
Facsimile:  (305) 375-5611
Attorney for Defendant Miami-Dade County

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on October 2, 2017, on all counsel or parties of record on the Service List below.

*s/Marlon D. Moffett*
Assistant County Attorney

## SERVICE LIST

**Anthony M. Georges-Pierre, Esq.**
E-mail:  agp@rgpattorneys.copm
**Rainier Regueiro, Esq.**
E-mail:  rregueiro@rgpattorneys.com
REMER & GEORGES-PIERRER, PLLC
44 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone:  (305) 416-5000
Facsimile:  (305) 416-5005
Attorneys for Plaintiff
*Served via CM/ECF*

**Marlon D. Moffett, Esq.**
E-mail:  mdm2@miamidade.gov
E-mail:  earuiz@miamidade.gov
**Javier Zapata, Esq.**
E-Mail:  jzapata@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, Florida 33128
Telephone:  (305) 375-5151
Facsimile: (305) 375-5634
Attorney for Defendant Miami-Dade County
*No service made*

21