UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-21658-WILLIAMS

HARRIUS JOHNSON,

        Plaintiff,

vs.

MIAMI-DADE COUNTY,

        Defendant.

_____/

## ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Partial Judgment on the Pleadings (DE 59) and the parties' cross-motions for summary judgment (DE 66; DE 68). Plaintiff brought this action under the Fair Labor Standards Act (FLSA) and then amended his complaint to add claims for racial discrimination and retaliation under 42 U.S.C. § 1983, Title VII, and the Florida Civil Rights Act (FCRA). The FLSA claims have been resolved leaving the discrimination and retaliation claims, Counts III through VIII. Both sides seek summary judgment on these remaining claims. Because Defendant has offered legitimate, non-discriminatory reasons for its actions and Plaintiff has not shown that those reasons are pretext for discrimination and retaliation, the Court finds that Defendant is entitled to summary judgment.

**I.    UNDISPUTED MATERIAL FACTS**

Plaintiff, an African-American male, began working for Miami-Dade County in 1994 and for the Miami-Dade County Police Department in August 1997. After working for the department for nearly 20 years, Plaintiff was terminated, effective January 29, 2016. Between 2012 and his termination in 2016, Plaintiff filed a series of complaints with the

1

Police Department, with other County officials, and with the Equal Employment Opportunity Commission (EEOC), which are discussed below. He was also the subject of various disciplinary actions during that time, which are also discussed in more detail below. At the time he was terminated, Plaintiff was a Sergeant in the Police Department. After his termination, on May 10, 2016, Plaintiff filed this suit. On July 22, 2016, he amended his complaint (DE 18) to include claims of racial discrimination and retaliation in violation of 42 U.S.C. § 1983 (Counts III and IV); claims of racial discrimination and retaliation in violation of Title VII (Counts V and VI); and claims of racial discrimination and retaliation in violation of the FCRA (Counts VI and VII).

### A. Plaintiff's Complaints of Discrimination[1]

As noted above, during the last four years of his employment with the Police Department, Plaintiff filed various complaints alleging racial discrimination and various types of misconduct by members of the Department. The complaints filed with the EEOC are as follows:

- On May 30, 2012, Plaintiff filed a Charge of Discrimination with the EEOC, alleging that he was disciplined and transferred in retaliation for filing a discrimination grievance against Chief Santana. (DE 69-9). Plaintiff also claimed that, while he was disciplined, white officers were not. (*Id.*). There is no record evidence as to if and how this Charge was resolved.

---

[1] In support of his allegations of discrimination and retaliation, Plaintiff primarily relies on his own Declaration, DE 69-1. The Declaration states that it is "based upon the best of my knowledge, both direct and indirect." (DE 69-1 at ¶1). Under Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added). There is nothing in the Declaration that indicates that Plaintiff's testimony regarding many of his allegations would be anything other than hearsay, speculation, or opinion. Therefore, the Court will not consider any statements in the Declaration unless (1) it is clear from the Declaration that Plaintiff has personal knowledge of the specific facts or (2) the allegations are supported by other parts of the record.

- On June 28, 2012, Plaintiff filed a Charge of Discrimination with the EEOC alleging that he was not promoted to the position of sergeant, despite being qualified. (*Id.*). There is no record evidence as to if and how this Charge was resolved.

- On November 12, 2013 Plaintiff filed a Charge of Discrimination with the EEOC alleging that he received unsatisfactory monthly performance reports by Lieutenant Leonard Ricelli after Plaintiff reported one of his subordinates, Officer Rachel Meadors, for using expletives when describing African-American members of the public.[2] (DE 74-13). Plaintiff also charged that after he was involved in a shooting, he was treated differently than white officers who had been involved in shootings. (*Id.*). On May 24, 2016, Plaintiff received a right to sue letter from the EEOC. (DE 18-2 at 1).

- On December 20, 2013, Plaintiff filed a Charge of Discrimination with the EEOC alleging that he had been suspended and disciplined because of his November 12, 2013 EEOC Charge. (DE 18-1 at 2). On May 24, 2016, Plaintiff received a right to sue letter from the EEOC. (DE 18-2 at 2).

- On April 30, 2015 Plaintiff filed two Charges of Discrimination with the EEOC alleging race and sex discrimination and retaliation. (DE 18-1 at 4-6). Plaintiff received right to sue letters from the EEOC on May 24, 2016. (DE 18-2 at 3-4).

Along with the EEOC complaints described above, Plaintiff filed the following complaints with the Police Department and other County Officials:

- On August 23, 2012, Plaintiff wrote to the Miami-Dade County Mayor and Board of County Commissioners to complain of discrimination, retaliation, workplace violence, harassment, and a hostile work environment. (DE 74-14). Thereafter, Plaintiff continued to complain to the Office of the Mayor and the Board of County Commissioners about issues in the Police Department and Plaintiff's treatment. (*Id.*).

- In November 2013, Plaintiff complained of discrimination, retaliation, and harassment to the Mayor's office. (DE 69-6). While Plaintiff states that the Mayor's Office closed the investigation the very next day (DE 69-1 at ¶15), Plaintiff was asked to come and give a statement a week later (*id.*; DE 69-7). There is no record evidence as to how the Mayor's Office resolved this complaint.

---

[2] Plaintiff maintains that, in 2013 after Plaintiff reported Officer Rachel Meadors for using racial slurs, he started receiving negative monthly reports from Lieutenant Leonard Ricelli, which were later rescinded. (DE 69-1 at ¶¶8-9).

3

- In 2013, Plaintiff appears to have filed a complaint or grievance with the Internal Affairs department, which contained claims against Lieutenant Ricelli, Captain Dieppa, Officer Figone, and Officer Meadors. (DE 69-10).[3] A Disposition Memorandum was issued in January 2015, sustaining several of the complaints. (Id.). While Plaintiff maintains that the Disposition Memorandum prepared by Internal Affairs was falsified and that one of the members assigned to the investigation panel was not impartial, he offers no record evidence, other than his own Declaration, in support of these allegations.

In addition, on October 2, 2015, Plaintiff was detained, searched, and questioned by Lieutenant Alex Diaz-De Villegas after Lieutenant Adrian Cummings' cell phone disappeared during a meeting in Lieutenant Diaz-De Villegas' office where Plaintiff was present. (DE 69-1 at ¶¶47-47). At the meeting, Plaintiff had received a DAR and five-day suspension. (Id.). During Plaintiff's detention, his blood pressure rose and Fire Rescue was called to transport Plaintiff to the hospital to be treated for chest pains and dizziness. (Id. at ¶52). When Fire Rescue arrived at the station to transport Plaintiff, they

---

[3] According to the Disposition Memorandum, Plaintiff complained that: (1) Lieutenant Ricelli did not allow Plaintiff to document observed unsatisfactory work habits of Plaintiff's subordinate on the subordinate's monthly evaluation; (2) Lieutenant Ricelli did not allow Plaintiff to discipline an employee for unsatisfactory work performance; (3) on May 26, 2013, Lieutenant Ricelli used a profanity toward Sergeant Freshko; (4) on July 12, 2013, Lieutenant Ricelli falsified a vehicle damage report; (5) on July 15, 2013, Lieutenant Ricelli falsified a Crash Review Panel Memorandum; (6) Captain Michael Dieppa did not allow Plaintiff to document observed unsatisfactory employee work habits on an employee's monthly evaluation; (7) Captain Dieppa did not allow Plaintiff to impose discipline on an employee for unsatisfactory work performance; (8) Captain Dieppa did not take action on employee misconduct that was reported to him; (9) Officer Ariel Figone suggested bringing his supervisor brownies that contained Ex-Lax so the supervisor would call in sick; (10) Officer Rachel Meadors called Plaintiff "North 4300 or 4300" and commented that if she had to get rid of Plaintiff she would poison his food or drink; (11) sometime prior to 2011, Office Meadors yelled expletives at an unknown African-American woman; (12) prior to 2011, Officer Meadors yelled at an unknown African-American woman using profanity; (13) sometime in 2013, Officer Meadors approached a group of unknown African-American children and told them to get their asses out of the way and go home and told one of the females "Look bitch, I don't care. I want you to get up and get the fuck out of here." (Id.) As noted above, the Disposition Memorandum sustained several of the complaints, specifically numbers 5, 11, 12, and 13. (Id.).

4

were told that Plaintiff was being detained as a suspect and that Plaintiff had to be accompanied by police officers. (*Id.*). As a result of the incident, on October 8, 2015, Plaintiff filed an EEOC Charge (DE 18-1 at 9-10). Then, on October 20, 2015—after Plaintiff was unable to obtain the security footage of the day he was detained—Plaintiff filed another EEOC Charge (DE 18-1 at 11). On October 21, 2015, Plaintiff wrote a memorandum to Lieutenant Miguel Palacios detailing Lieutenant Diaz-De Villegas' actions and alleging that Lieutenant Diaz-De Villegas had violated Plaintiff's constitutional and civil rights. (DE 69-25). Thereafter, the State Attorney's office began an investigation of Plaintiff and possible grand theft charges regarding the missing cell phone. (DE 69-28). The State Attorney's investigation was closed due to a lack of witnesses or corroborating evidence. (*Id.*). On January 3, 2016, Plaintiff wrote a letter to Katherine Fernandez Rundle, the State Attorney, in which he complained of the October 2, 2015 incident and argued that he was the victim of crimes during that incident. (DE 69-30).

### B. Plaintiff's Disciplinary History

Though the Country acknowledges that, from 2009 until his termination, Plaintiff received "above satisfactory" performance evaluations, they note that Plaintiff was the subject of several disciplinary actions during his final few years with the department. (DE 69-2). Specifically, they cite to five disciplinary actions brought against Plaintiff from August 2013 until his termination in January 2016, as set out below:[4]

---

[4] The County has presented evidence of earlier disciplinary actions. Plaintiff maintains, however, without any supporting evidence, that the earlier disciplinary actions were supposed to have been purged from his record as part of a settlement in a prior lawsuit. In any event, the Court need not consider these actions because the County's own documents indicate that the earlier actions were not considered in the decision to terminate Plaintiff.

5

- On August 29, 2013, Plaintiff received a Record of Counseling (ROC), which stated that Plaintiff sent an email to several superiors in which he expressed personal concerns and opinions about various superiors and subordinate officers. (DE 67-18). Plaintiff's superiors viewed this as an attempt by Plaintiff to circumvent the chain of command and advised Plaintiff not to do this again. (*Id.*). Despite this counseling, Plaintiff sent similar critical emails several more times, and so the ROC found that Plaintiff purposely disregarded direct orders and warned him that further incidents would result in disciplinary action. (*Id.*).

- On September 25, 2013, the County issued a Disciplinary Action Report (DAR), which resulted in a five-day suspension for Plaintiff. (DE 67-8). According to the DAR, Plaintiff improperly used a transfer evaluation for one of his subordinates, Officer Juan Germosen, to make allegations against Lieutenant Leonard Ricelli, Plaintiff's supervisor at the time. (*Id.*). Lieutenant Ricelli, ordered Plaintiff to remove the allegations because the evaluation was an improper vehicle for the complaints against him, instructing Plaintiff to raise his concerns directly with the Professional Compliance Bureau. (*Id.*). In response, Plaintiff emailed Lieutenant Ricelli, accused the Lieutenant of lying, and told her to stay away from Plaintiff. (*Id.*). The DAR found Plaintiff's behavior toward Lieutenant Ricelli disrespectful and defamatory. (*Id.*). Plaintiff appealed the DAR, and the hearing examiner agreed that Plaintiff's conduct was improper, insubordinate, disrespectful, condescending, and uncooperative, upholding the five-day suspension. (*Id.*). The hearing examiner's findings were sustained by the Mayor of the County. (DE 69-8).

- On October 7, 2014, the County issued a DAR because Plaintiff accidentally discharged a weapon after conducting a demonstration. (DE 67-17). Plaintiff did not respond to the DAR and it resulted in a written reprimand. (*Id.*).

- On June 29, 2015, the County issued Plaintiff another DAR, which resulted in a five-day suspension. (DE 67-14). According to the DAR, during a meeting Plaintiff's Captain and Lieutenant asked Plaintiff to make changes to a DAR Plaintiff had prepared for his officers, but Plaintiff refused, responding that the Lieutenant could make the changes if she wanted but he was not making them. (*Id.*). During the course of the meeting, Plaintiff insisted he had "bigger problems" but refused to elaborate when asked what the problems were. (*Id.*). Plaintiff twice stood up to leave before the meeting was over and, the second time, exited the room despite being asked to stay, and without requesting to do so or having been ordered to do so. (*Id.*). The DAR found that these actions were unprofessional and disrespectful and showed a disdain for authority. (*Id.*). Plaintiff did not appeal the five-day suspension he received as a result of the June 29, 2015 DAR.

- On August 19, 2015, Plaintiff received his final DAR, which resulted in his termination. (DE 67-4). According to the DAR, Plaintiff met with Captain White and Lieutenant Vasquez to discuss another DAR. (*Id.*). When Plaintiff walked

6

into the office, he was asked to take a particular seat, which he refused. (*Id.*). Plaintiff was presented with the DAR, and he got up and left the room with the DAR without explanation, ultimately returning and presenting the Captain with a signed DAR. (*Id.*). After signing some additional documents, Plaintiff again left the room without being excused. (*Id.*). When he returned, the Captain asked Plaintiff to show his copies of the DAR and other documents to ensure that Plaintiff had received the copies required by departmental policy. (*Id.*). Plaintiff refused, stating that he felt sick and needed to leave, so the Captain asked the Lieutenant to see if someone was available to work Plaintiff's shift. (*Id.*). Plaintiff then stated that he did not have time for this and again left the office without being excused, slamming the door with such force that the door became jammed, trapping the Captain and Lieutenant in the office. (*Id.*). The DAR stated that this behavior was unprofessional and insubordinate. (*Id.*). Thereafter, the County attempted to locate Plaintiff and discovered that he no longer lived at the address on record for him, in violation of departmental policy requiring departmental employees to keep their personal data, including their home address, up to date. (*Id.*).

As a result of this last incident and Plaintiff's prior disciplinary history, the County made the decision to terminate Plaintiff. (*Id.*). Plaintiff did not appeal the termination. (DE 67-16).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury

7

or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

The County seeks summary judgment on multiple grounds, maintaining that they are entitled to summary judgment on all of Plaintiff's remaining claims for three reasons: (1) because Plaintiff cannot establish a prima facie case of race discrimination or retaliation; (2) because the County has articulated legitimate, non-discriminatory reasons for Plaintiff's suspensions and termination; and (3) because there is no evidence that the Defendant's proffered reasons for the suspensions and termination are pretext for discrimination. Additionally, the County maintains that it is entitled to summary judgment on Plaintiff's § 1983 claims because Plaintiff has not established the existence of a policy, custom, or practice that led to a violation of Plaintiff's rights.

Plaintiff responds by contending that there is no dispute that he has established three of the four elements of his prima facie discrimination claim and two of the three

elements of his retaliation claim. Plaintiff, therefore, moves for summary judgment arguing that there are no question of fact regarding the last element of each of these claims and that the County's proffered reasons for its actions are pretext for unlawful discrimination.

### A. The Applicable Legal Standard

The parties agree that this is a case based on circumstantial, not direct, evidence. Cases based on circumstantial evidence utilize the *McDonnell Douglas* analysis, under which a plaintiff bears the initial burden of establishing the elements of his prima facie case of discrimination.[5]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). To establish a prima facie case of discrimination, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than a similarly-situated individual outside his protected class. *Maynard v. Board of Regents of the Division of Universities of the Florida Department of Education*, 342 F.3d 1281, 1289 (11th Cir. 2003). To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse

---

[5] When § 1983 is used as a parallel remedy for violation of Title VII, the elements of the two causes of action are the same. *Cross v. Alabama, State Department of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995). Identical methods of proof, as described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), are used. *Richardson v. Leeds Police Department*, 71 F.3d 801, 805 (11th Cir. 2000). Consequently, if Plaintiff fails to establish his Title VII claim, his § 1983 claim also fails. Additionally, because the FCRA is patterned on Title VII, under Florida law, decisions construing Title VII are applicable to and guide the analysis of claims under the FCRA. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387, 1389 (11th Cir. 1998). Thus, the legal framework for the analysis of Plaintiff's claims under § 1983, Title VII, and the FCRA is the same.

employment action; and (3) that there is some causal relationship between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). After a plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employer's actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). If the employer offers such a reason, the burden shifts back to the plaintiff to show that the employer's reason was pretext for prohibited discrimination. *Id.* at 804.

To avoid summary judgment on an employment discrimination and retaliation claim, the plaintiff must introduce significantly probative evidence that the proffered reason for the employment action is both false and that discrimination is the real reason for the action. *Brooks v. County Commission of Jefferson County, Alabama*, 446 F.3d 1160, 1163 (11th Cir. 2006). To do this, a plaintiff must "demonstrate[] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Alabama State Tenure Commission*, 405 F.3d 1276, 1289 (11th Cir. 2005). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008). Thus, "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citations omitted).

### B. Legal Analysis: Plaintiff Cannot Demonstrate Pretext

Because the Court finds that Plaintiff has not presented sufficient evidence to create a genuine issue of material fact regarding whether the City's proffered non-discriminatory reasons for Plaintiff's suspension and termination were pretextual, the Court need not address in depth the merits of Plaintiff's prima facie showing of discrimination. Put differently, even if the Court accepts that Plaintiff has satisfied the first step of the *McDonnell Douglas* framework, summary judgment in favor of Defendant is still appropriate based on this record.

The County contends that Plaintiff was suspended and then terminated because of his disrespectful, insubordinate, unprofessional, discourteous, and unbecoming conduct towards co-workers and superiors, coupled with his disciplinary history. Plaintiff argues that the County's decisions were clearly based on discriminatory and retaliatory motives, and attempts to establish pretext by arguing that similarly situated non-African-American employees were treated differently. Plaintiff also attempts to establish pretext by arguing that his complaints of discrimination were not seriously investigated. Because Plaintiff has not presented sufficient evidence to substantiate either of these arguments, however, the Court is compelled to grant summary judgment in favor of Defendant.

### i. Plaintiff Has Not Presented Evidence of Valid Comparators

In order to compare a plaintiff's treatment to that of another employee in the context of demonstrating pretext, the plaintiff must show that he and the other employee are similarly situated in all relevant respects, including whether he and the other employee are involved in or accused of the same or similar conduct and are disciplined in different ways. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Misconduct that is merely "similar" to the misconduct of the disciplined plaintiff is insufficient (*Rioux*, 520 F.3d at

11

1280); "[t]he quantity and quality of the comparator's misconduct [must] be nearly identical" to that of the plaintiff. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). As the Eleventh Circuit has explained, this insistence on nearly identical conduct is critical in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Burke-Fowler*, 447 F.3d at 1323 (quoting *Maniccia*, 171 F.3d at 1368); *see also Rioux*, 520 F.3d at 1280. Applying this standard, the Court finds that Plaintiff's purported comparators are not sufficiently similar to satisfy this standard and create a genuine issue of material fact regarding Defendant's proffered reason for Plaintiff's termination.

Plaintiff has offered record evidence as to the following comparators and their disciplinary history:

(1) Officer Meadors: Officer Meadors was given a written reprimand for failing to properly report a vehicle crash. (DE 69-5). Office Meadors was given two ROCs, one each after being involved in two separate vehicle crashes. (Id.). Office Meadors received a five-day suspension for using racial slurs.[6]

(2) Officer Espinosa: Officer Espinosa was given a five-day suspension for lying about the source of his exposure to tuberculosis and making meritless claims about Plaintiff failing to perform his duties. (DE 69-17).

(3) Officer Laverde: Officer Laverde received a twenty-day suspension. (DE 69-31). In his Declaration, Plaintiff maintains that the suspension was for a DUI during which

---

[6] While there is no record evidence of Officer Meadors' suspension, neither side disputes that she received a five-day suspension for using racial slurs.

Officer Laverde struck someone and then left the scene. (DE 69-1 at ¶71). However, there is no record evidence to support this statement.

(4) Lieutenant Simonton: Lieutenant Simonton was investigated for inappropriately touching a minor. (DE 69-32). A DAR was issued recommending dismissal. (Id.). Upon review, it was determined that there was no corroborating evidence in a he-said-she-said situation so the findings were not sustained. (Id.).

(5) Sergeant Atherley: In 2015, Sergeant Atherley was issued a DAR for falsifying time records. (DE 69-33). As a result, dismissal was recommended. (Id.). However, the County and Atherley entered into a Memorandum of Understanding which resulted in his demotion. (Id.). Previously, in 2011, Atherley received a DAR and a ten-day suspension for deactivating his location/GPS device multiple times during his shifts. (Id.). In 2010, Atherley received an ROC for the late submission of eight Daily Activity Reports. (Id.).

(6) Lieutenant Ricelli: An Internal Affairs document sustained charges that in 2013 Lieutenant Ricelli falsified a Crash Review Panel Memorandum. (DE 69-10). Despite the Internal Affairs document, Lieutenant Ricelli testified that ultimately the charges were not sustained. (DE 67-7 at 71:3-9).

These individuals cannot be properly assessed as comparators, because none of them are substantially similar to Plaintiff as required by the relevant caselaw. *See e.g., Blow v. Virginia College*, 619 Fed. Appx. 859, 862 (11th Cir. 2015) (granting summary judgment because plaintiff's proffered comparators were not accused of the same or similar conduct as plaintiff). Only one of the proffered comparators held the same position as Plaintiff, Sergeant Atherley. But Sergeant Atherley's conduct was not similar to—let alone nearly identical to—Plaintiff's conduct. Over a period of five years, Atherley was

disciplined for turning his Daily Activity Reports in late, deactivating his location/GPS device, and falsifying his time records. This conduct is entirely distinct from Plaintiff's four disciplinary actions in two years, involving insubordination, disregard for the chain of command, and disrespecting superior officers. Thus, Plaintiff and Atherley are not similarly situated and Atherley is not a valid comparator.

Additionally, as noted above with Sergeant Atherley, none of the proffered comparators were disciplined for conduct that was "nearly identical to" Plaintiff's conduct; none of Plaintiff's comparators were disciplined for insubordination and ignoring the chain of command. There is also no record evidence that Plaintiff's comparators had a similarly extensive disciplinary history. In a two-year period, Plaintiff received an ROC and four DARs. None of Plaintiff's proffered comparators have as many disciplinary actions against them in as short a time. As the County argues, Plaintiff's disciplinary history showed a continuing pattern of a failure to follow direct orders and insubordination, and disrespect for superiors, which they perceived to be a continuing problem with the same issue: a lack of due regard for his superiors and necessary adherence to the chain of command. *See e.g., Maniccia v. Brown*, 171 F.3d 1364, 1368–69 (11th Cir.1999) (female plaintiff with at least four policy violations not similarly situated to male employees who each committed a single policy violation). Consequently, Plaintiff's disciplinary history differentiates him from all of his proffered comparators.

Based on these distinguishing factors, if the Court were to consider these comparators in evaluating pretext, it would be doing precisely what the Eleventh Circuit warned against in *Burke-Fowler*: it would be "second-guessing employers' reasonable decisions and confusing apples with oranges." There is no question that some of the

14

proffered comparators were found to have engaged in extremely troubling behavior, such as using racial slurs, inappropriately touching a minor, and falsifying records. But as the jurisprudence in this circuit makes clear, the Court cannot independently assess the severity of the misconduct and substitute its own judgment regarding appropriate discipline for that of the County. Because of this, the Court cannot find, as Plaintiff urges, that because the actions of these other officers are more egregious than Plaintiff's actions, the absence of similar or stronger disciplinary repercussions rebuts the County's proffered reason for Plaintiff's termination. *See Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1244 (11th Cir. 2001) (noting that Title VII does not turn federal courts into a "super-personnel department that reexamines an entity's business decisions") (citation omitted).

Additionally, the Court notes that the only evidence that Plaintiff has offered to support many of his claims about his proffered comparators is his own Declaration, DE 69-1. There is nothing in the Declaration that indicates that Plaintiff has personal knowledge of many of the allegations he makes about his comparators. As set out previously, the Declaration states that it is "based upon the best of [Plaintiff's] knowledge, both direct and indirect." (DE 69-1 at ¶1). Under Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added). There is nothing in the Declaration that indicates that Plaintiff's testimony on many of the matters involving his comparators would be anything other than hearsay, speculation, or opinion.

In sum, for the foregoing reasons, the Court finds that Plaintiff has not presented sufficient evidence of similarly situated comparators that would create a genuine issue of material fact regarding whether the Defendant's proffered reason for his termination was pretextual.[7]

### ii. Plaintiff Has Not Presented Evidence That the County Failed to Adequately Investigate Claims of Discrimination

Plaintiff also argues that he can demonstrate pretext by establishing that the County failed to seriously investigate claims of racial discrimination. Plaintiff has presented evidence that he filed numerous complaints with his superiors within the Police Department and with County officials. However, Plaintiff has failed to present evidence, other than his own Declaration, establishing that the County did not seriously investigate or otherwise address Plaintiff's claims. In fact, Plaintiff's own evidence seems to contradict this assertion.

For example, in November 2013, when Plaintiff complained to the Mayor's office about discrimination, retaliation, and harassment, Plaintiff was asked to come give a statement a week after Plaintiff complained. Even though Plaintiff maintains—without any corroborating evidence—that the Mayor's office closed the investigation the day after the complaint was sent, it appears that the Mayor's office did endeavor to investigate Plaintiff's complaints and that the investigation was not immediately closed.[8] Another

---

[7] The above-cited issues with Plaintiff's purported comparators would also apply with regard to a prima facie showing of racial discrimination. However, as noted at the outset, the court need not review that deficiency in depth because, even if Plaintiff had satisfied the prima facie requirement under the *McDonnell Douglas* framework, he has failed to show that the County's proffered reason for his termination was pretextual.

[8] There is no other record evidence regarding this investigation that would demonstrate what the County did after interviewing Plaintiff.

instance where Plaintiff maintains his complaints were not seriously investigated involved grievances Plaintiff filed against Lieutenant Ricelli, Captain Dieppa, Officer Figone, and Officer Meadors. However, these complaints were investigated by Internal Affairs and resulted in a Disposition Memorandum. First, the Court notes that there is no record evidence that this investigation was not thorough and Plaintiff does not point to any other than his own opinion. Second, the Disposition Memorandum indicates that during the course of the investigation, the investigating officers spoke to the accused as well as to third party witnesses. Third, some of the complaints against Lieutenant Ricelli and Officer Meadors were sustained. Finally, and importantly, many of the grievances listed in the January 15, 2015 Disposition Memorandum are not claims of unlawful harassment, retaliation, or discrimination. Thus, there is no record evidence to indicate that the County did not investigate or address Plaintiff's complaints of unlawful harassment, retaliation, or discrimination.

Consequently, Plaintiff has not presented sufficient evidence to establish that the County failed to seriously investigate his complaints. Because Plaintiff has presented no evidence that the County's reasons for disciplining and terminating Plaintiff were false and that the real reason for the County's actions was unlawful discrimination and retaliation, Plaintiff cannot establish pretext through this evidence, either.

## IV. CONCLUSION

Based upon a review of the record and the arguments and evidence presented by the Parties, the Court finds that the County has offered legitimate, non-discriminatory reasons for its suspensions and termination of Plaintiff. The Court further finds that Plaintiff has not presented any record evidence to establish that those reasons are false

and that discrimination or retaliation was the real reason for the County's actions. Thus, Plaintiff has failed to show through affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial and the County is entitled to summary judgment on Plaintiff's claims. Accordingly, it is **ORDERED and ADJUDGED** as follows:

1) Plaintiff's Motion for Partial Judgment on the Pleadings (DE 59) is **DENIED as MOOT.**

2) Plaintiff's Motion for Summary Judgment (DE 68) is **DENIED.**

3) Miami-Dade County's Motion for Final Summary Judgment (DE 66) is **GRANTED.**

4) All pending motions not otherwise ruled upon are **DENIED as MOOT.**

5) The Court will enter a separate judgment.

6) The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 30th day of March, 2018.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE