FILED BY HH D.C.

Feb 28, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 28, 2020

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  18-11479-AA
Case Style: Harrius Johnson v. Miami Dade County
District Court Docket No: 1:16-cv-21658-KMW

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 18-11479

_____

District Court Docket No.
1:16-cv-21658-KMW

HARRIUS JOHNSON,

Plaintiff - Appellant,

versus

MIAMI DADE COUNTY,

Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: January 30, 2020
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna H. Clark

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  18-11479

_____

D.C. Docket No. 1:16-cv-21658-KMW

HARRIUS JOHNSON,

Plaintiff – Appellant,

versus

MIAMI-DADE COUNTY,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 30, 2020)

Before MARTIN, TJOFLAT, and PARKER,[*] Circuit Judges.

PER CURIAM:

I.

_____

[*] Honorable Barrington D. Parker, Senior United States Circuit Judge for the Second
Circuit, sitting by designation.

Harrius Johnson, a black male, was terminated from the Miami-Dade County Police Department ("MDPD") for insubordination and disrespecting his superior officers.[1]  Johnson sued Miami-Dade County ("the County"), alleging that the real reasons for his termination were racial discrimination and unlawful retaliation in violation of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Florida Civil Rights Act ("FCRA").  Specifically, Johnson asserted that the MDPD terminated him in retaliation for filing various complaints with the Equal Employment Opportunity Commission ("EEOC").[2]  The District Court awarded the County summary judgment, concluding that Johnson could not show that the County's nondiscriminatory, nonretaliatory reasons for terminating him were pretextual under the *McDonnell Douglas* framework.[3]  Johnson appeals.

First, we conclude that the District Court must reevaluate Johnson's comparators evidence under the new standard that we announced in *Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc), which was decided after

---

[1] Additionally, Johnson was terminated because he failed to keep his home address updated per MDPD policy.

[2] Johnson also pled a Title VII discrimination claim.  However, the core of his grievance is a retaliation claim, and Johnson has not offered any evidence that his race or sex, as opposed to his engagement in allegedly protected conduct under Title VII, was the reason for his termination.  Therefore, this opinion focuses on Johnson's retaliation claim.

[3] Separately, regarding Johnson's § 1983 claim, the District Court quashed Johnson's subpoena to depose the Mayor of Miami-Dade County, Mayor Carlos Gimenez, and granted a protective order barring future attempts to depose him for this case.

the District Court ruled in this case.  We therefore vacate that portion of the District Court's judgment and remand for consideration of whether, under *Lewis*, Johnson can establish pretext for any of the adverse employment actions taken against him.[4]

Next, we affirm the District Court's judgment that, in the absence of valid comparators, Johnson failed to establish a retaliation claim regarding (1) the actions of Lieutenant Ricelli in 2013, (2) the discipline he suffered from Captain White in 2015, and (3) Director Patterson's decision to terminate him in 2015.

Finally, we affirm the District Court's ruling that barred Johnson from deposing the Miami-Dade County mayor regarding Johnson's 42 U.S.C. § 1983 claim.

Accordingly, we affirm in part, vacate in part, and remand to the District Court for reconsideration.

## II.

Relevant to this appeal are three sets of facts: (A) those related to Johnson and his supervisor, Lieutenant Ricelli, in 2013; (B) those related to discipline imposed on Johnson by Captain White in June of 2015; and (C) those related to Director Patterson's decision to terminate Johnson in August of 2015.

---

[4] The District Court need not consider Johnson's claims against Lieutenant Ricelli regarding negative monthly evaluations or Ricelli's alleged denial of Johnson's personal leave for the reasons discussed *infra* Part IV.C.i.

A.

Johnson claims Ricelli retaliated against him for reporting Ricelli's and
other officers' misconduct in 2013.  Specifically, Johnson claims that, as a result of
his reports, (i) Ricelli began giving Johnson low monthly evaluations; (ii) Ricelli
denied Johnson three days of personal leave; and (iii) Ricelli formally disciplined
Johnson with a Record of Counseling ("ROC") and a Disciplinary Action Report
("DAR").

Turning to Johnson's "reports," in July of 2013, Johnson sent an email to
Ricelli and other supervisors that complained that Ricelli had directed Johnson to
alter the evaluation of another officer.  In that evaluation, Johnson claimed that the
other officer used racial slurs and profanity towards black citizens while
performing her duties.

The next month (August of 2013), Johnson received an ROC because of the
July email.  The ROC stated that his email inappropriately expressed personal
concerns and opinions about various officers outside of the proper chain of
command.  Johnson sent similar emails several more times, which the ROC
deemed purposeful disregard for direct orders, and it warned Johnson that further
disciplinary action was possible if his conduct continued.

Then, in September of 2013, Johnson used a transfer evaluation for a black
officer under his command to express concerns that Ricelli falsified a document

4

that resulted in the revocation of personal vehicle privileges for that officer. Roughly a week later, the County issued Johnson a DAR that suspended him for five days.  Johnson was issued the DAR because he was warned that it was improper to use the transfer evaluation to complain about Ricelli, but Johnson refused to alter his evaluation.  Such conduct was found to be disrespectful and defamatory.  Johnson appealed the DAR, but the hearing examiner agreed that Johnson's conduct was insubordinate, disrespectful, uncooperative, and improper. However, some of Johnson's complaints about other officers and Ricelli were ultimately sustained when he properly filed his grievances with the Internal Affairs department.

## B.

Jumping forward to 2015, on April 30, Johnson filed two Charges of Discrimination with the EEOC, alleging retaliation, race discrimination, and sex discrimination.

Roughly two months later, on June 27, Johnson drafted a DAR against a subordinate officer who he believed had violated several MDPD policies.  In a meeting regarding the DAR, Captain White asked Johnson to alter the report, but Johnson refused because he believed doing so would amount to unlawfully falsifying an official document.  According to Johnson, White threatened that he would keep Johnson in his office all night until Johnson changed the DAR.

5

During the meeting, Johnson repeatedly stood up to leave the room, claimed he had "better things to do," and otherwise was deemed to have been insubordinate and disrespectful.  Therefore, on June 29, the County issued Johnson a DAR that suspended him for five days.  According to Johnson, the DAR was, in reality, issued in retaliation for his April EEOC complaints, not because of his conduct at the meeting.

## C.

Approximately six weeks later, on August 14, Johnson sought to issue another DAR against the same subordinate officer for additional policy violations. The next day, on August 15, White summoned Johnson to the office, where White presented Johnson with the June 29 DAR.  White claims that Johnson left the room without permission or explanation to make copies of the DAR, walked out of the room multiple times without being excused, and finally stated that he did not "have time for this," before walking out and slamming the door so hard that it jammed, stranding White in the room.  Johnson claims none of this happened, and that he calmly left the room.  We assume Johnson's version is true for the purposes of summary judgment.

As a result of this meeting, on August 19, White drafted a DAR against Johnson based on White's allegedly falsified version of the August 15 events. White recommended that Johnson receive a 20-day suspension for his conduct.

However, on August 25, Police Director JD Patterson overruled this recommendation and decided to terminate Johnson's employment.  Roughly five months later, on January 28, 2016, a final appeal meeting was held where Johnson, represented by a member of the Professional Law Enforcement Association, was permitted to provide his version of the August 15 events.  Patterson upheld the termination.

## D.

Johnson sued the County, alleging that the County engaged in various illegal conduct.  As relevant to this appeal, Johnson alleged racial discrimination and unlawful retaliation in violation of Title VII, § 1983, and the FCRA.  In the District Court, both parties moved for summary judgment on these claims.  The Court found that, even assuming Johnson could make a prima facie showing of discrimination or retaliation, the County was entitled to summary judgment.  The County was entitled to summary judgment because, under the *McDonnell Douglas* framework, Johnson had not demonstrated a genuine issue of material fact regarding whether the County's non-discriminatory reasons for the adverse employment actions against Johnson were pretextual.  Specifically, the Court found that Johnson had not presented evidence that similarly situated employees were treated dissimilarly (i.e., Johnson had not presented any "valid comparators"),

and it rejected Johnson's argument that his evidence showed that the County

inadequately investigated his claims of discrimination.[5]  Johnson appeals.

### III.

We review a district court's grant of summary judgment *de novo*.

*Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th

Cir. 2009).  "We may affirm on any ground supported by the record."  *LeCroy v.*

*United States*, 739 F.3d 1297, 1312 (11th Cir. 2014).

### IV.

### A.

When a Title VII retaliation claim (such as Johnson's) is based on

circumstantial evidence, this Circuit utilizes the three-part *McDonnell Douglas*[6]

burden-shifting framework.  *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th

Cir. 2013).

"First, the plaintiff must establish a prima facie case, which raises a

presumption that the employer's decision was more likely than not based upon an

impermissible factor."  *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th

---

[5] In the District Court and in his brief on appeal, Johnson argued that he could prove pretext by showing that the County failed to adequately investigate claims of discrimination.  We agree with the District Court that this claim is clearly belied by the record, among other reasons, because once Johnson complained in the appropriate channels, some of his most serious accusations were sustained by the MDPD.

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

Cir. 1995). To establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc).

Second, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Richardson*, 71 F.3d at 805.

Third, if the defendant offers a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to establish that the reason offered by the defendant "was not the real basis for the decision, but a pretext for discrimination." *Id.* at 806.

Additionally, when, as here, a plaintiff attempts to use Title VII and 42 U.S.C. § 1983 as parallel remedies for the same allegedly unlawful employment discrimination, the elements of the two causes of action are identical, *Cross v. Alabama*, 49 F.3d 1490, 1508 (11th Cir. 1995), and identical methods of proof, such as the *McDonnell Douglas* framework, are used for both causes of action, *Richardson*, 71 F.3d at 805. And because the FCRA is based on Title VII, decisions construing Title VII apply to the analysis of FCRA claims. *Harper v.*

*Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387, 1389–90 (11th Cir. 1998).

Therefore, all of Johnson's claims are governed by the *McDonnell Douglas*

framework.

B.

We first address the District Court's ruling that Johnson did not present valid

comparators evidence.

In a Title VII retaliation case, a plaintiff can attempt to establish that his

employer's proffered reason for its employment decision was a pretext for

unlawful activity by showing that the employer treated similarly situated

employees differently—i.e., by showing that valid "comparators" were treated

differently than the plaintiff.  *See Lewis*, 918 F.3d at 1223 n.9 ("Evidence

necessary and proper to support a plaintiff's *prima facie* [Title VII discrimination]

case may of course be used . . . [at the tertiary pretext stage] to demonstrate that the

defendant's explanation for its conduct was pretextual.").

The District Court evaluated Johnson's comparators before this Court

changed the standard for considering such evidence in *Lewis*.  There, we concluded

that the traditional "nearly-identical test is too strict," and held that the new

standard is "show[ing] that [the plaintiff] and [his] comparators are 'similarly

situated in all material respects.'"  *Id.* at 1224.  We therefore vacate the District

10

Court's ruling on Johnson's comparators evidence and remand to the District Court for reconsideration of the evidence in light of our guidance in *Lewis*.[7]

C.

We next determine whether Johnson can carry his burden under *McDonnell Douglas* on any of his retaliation claims in the absence of valid comparators evidence.  We conclude that he cannot.

Johnson alleges various retaliatory acts that concern three sets of facts: (i) Lieutenant Ricelli's actions in 2013; (ii) Captain White's disciplinary actions in June of 2015; and (iii) Director Patterson's decision to terminate him in August of 2015.  We address each in turn.

i.

We first consider Johnson's retaliation claims regarding Johnson's superior officer, Lieutenant Ricelli, in 2013.

Johnson claims that Ricelli unlawfully retaliated against Johnson because he reported Ricelli's and other officers' misbehavior.  Johnson alleges the retaliation occurred in three ways: (1) Ricelli began giving Johnson low monthly evaluations;

---

[7] Specifically, in *Lewis*, we stated the following principles: (1) a plaintiff does *not* have to prove "that she and her comparators are identical save for their race or gender;" and (2) it is *not* necessary that a plaintiff and her comparators have "precisely the same [job] title[s]" or functions.  *Id.* at 1227.  However, ordinarily, a valid comparator: (a) "will have engaged in the same basic conduct (or misconduct) as the plaintiff;" (b) "will have been subject to the same employment policy, guideline, or rule as the plaintiff;" (c) will have been "under the jurisdiction of the same supervisor as the plaintiff," but not invariably so; and (d) "will share the plaintiff's employment or disciplinary history."  *Id.* at 1227–28.

11

(2) Ricelli denied him three days of personal leave; and (3) Ricelli formally

disciplined Johnson with an ROC and a DAR.  We conclude that the County is

entitled to summary judgment on these claims.

First, the negative monthly evaluations are not material adverse employment

actions based on the facts of this case, and therefore cannot serve as the basis for a

Title VII retaliation suit.  A material adverse employment action is one that might

have "'dissuaded a reasonable worker from making or supporting a charge of

discrimination.'"  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68,

126 S. Ct. 2405, 2415 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219

(D.C. Cir. 2006)).   Here, Johnson generally alleges that the negative evaluations

"affected the terms and conditions of [his] employment, including [his] annual

performance evaluation, disciplines issued, and other rights provided for under the

Collective Bargaining agreement."  However, at no point does Johnson provide

any support for his assertions or allege why a reasonable worker in his shoes would

have been dissuaded from reporting allegedly retaliatory conduct because of these

negative evaluations.  *Cf. Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008)

(finding that an unfavorable performance review, which rendered an employee

ineligible for a merit pay increase that was due five months later, was a material

adverse employment action).  In fact, his claims about the changes in the terms and

conditions of his employment are affirmatively negated by his own brief, in which

he says that "[a]t the time of his termination, Plaintiff was a supervisor who held the rank of Police Sergeant, with a successful three years of above satisfactory and outstanding employee evaluations."  Accordingly, Johnson has not established that the negative monthly evaluations were material adverse employment actions.

Second, Johnson cannot recover based on Ricelli's alleged denial of Johnson's request for personal leave because Johnson raised this argument for the first time in his reply brief.  *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief.").

Third and finally, Johnson cannot recover for the formal discipline he suffered from Ricelli—namely, the ROC and the DAR—because Ricelli had legitimate, nonretaliatory reasons for disciplining Johnson, and Johnson has not offered evidence that these reasons were pretextual.

Johnson was issued the ROC because he did not file his complaints against Ricelli and other officers in the proper channels, which was deemed an inappropriate attempt to circumvent the proper chain of command.  When Johnson continued this conduct, he was warned that further discipline was possible.  Then, when Johnson did not cease, he was issued a DAR.

Promoting the chain of command and punishing insubordination are legitimate, important concerns for a police force, and Johnson has not offered

13

proof that these legitimate reasons were pretextual.  In fact, when Johnson filed his

complaints in the proper channels, some of his most serious complaints were

sustained.  This suggests that the County was not attempting to sweep Johnson's

complaints under the rug, but rather that Johnson's inappropriate methods of

complaining were the reason he was disciplined.  Because Johnson offers no

reason that this discipline was illegitimate or pretextual, he has not satisfied his

burden under *McDonnell Douglas*.[8]

ii.

We next address Johnson's complaint about discipline imposed by Captain

White in June of 2015.  We conclude that the County was entitled to summary

judgment on this claim.

Johnson claims that White filed a DAR against Johnson because Johnson

filed two Charges of Discrimination with the EEOC in April of 2015.  However,

because the County has offered a legitimate, nondiscriminatory reason for its

decision to discipline Johnson in June of 2015—namely, insubordination—the

burden is on Johnson to establish that this proffered reason is pretextual.

Johnson argues that he can establish pretext because his discipline occurred

fifty-eight days after his EEOC complaint.  But "[w]e have cautioned that 'mere

---

[8] On remand, it is for the District Court to determine whether Johnson's comparators evidence can nonetheless establish pretext and, thus, satisfy his burden regarding this claim.

temporal proximity, without more, must be very close' to suggest causation [in a Title VII retaliation case]." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018) (internal quotation marks omitted) (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).  A three-to-four-month disparity between protected conduct and an adverse employment action is insufficient to establish pretext, *Thomas*, 506 F.3d at 1364, but a two-week disparity can be evidence that the proffered reason was pretextual, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006).  However, even when the disparity is only two weeks, we have suggested that such proximity is "probably insufficient to establish pretext by itself."  *See id.*

Here, Johnson claims that the temporal proximity (nearly two months) between his protected conduct (filing complaints with the EEOC) and his adverse employment action (suspension) establishes that the County's reason for suspending him (insubordination) was a pretext for retaliation.  However, our cases have suggested that much shorter disparities are insufficient, standing alone, to establish pretext.  *See id.*  Therefore, because Johnson did not provide any other evidence of pretext, he has failed to satisfy his burden under *McDonnell Douglas*

to prove that the legitimate reason proffered by the County was pretextual as related to the June 2015 DAR.[9]

iii.

Finally, we address Johnson's complaints about the August 2015 events that ultimately resulted in his termination from the MDPD.

The only possible claim that Johnson could have regarding the events is that the termination was retaliation for the April 2015 EEOC complaints.[10]  We conclude that the District Court properly awarded summary judgment to the County on this claim.

As discussed in Part IV.C.ii., Johnson cannot establish pretext solely based on the temporal proximity between protected conduct (his April EEOC complaints) and an adverse employment action (termination of employment) when such a large gap exists between the two events.  However, unlike the June discipline, Johnson alleges that the August discipline was based, at least in part, on a falsified report of insubordination written by White.  This fact, in addition to temporal proximity, might preclude summary judgment if it was White who terminated Johnson because a reasonable jury could infer that the reason White falsified the

---

[9] As noted *supra* n.8, Johnson may be able to establish pretext on remand via valid comparators evidence.

[10] As noted *supra* n.2, Johnson has not alleged any facts that could support a discriminatory discharge claim based on his race, sex, or national origin.

disciplinary report against Johnson was retaliation for the EEOC complaints, at
least when no other reason for such a falsified report was readily apparent.

But that is not the case here because it was *Patterson* who ultimately decided
to terminate Johnson in August of 2015, not White, and there is no evidence that
Johnson's EEOC complaints inspired Patterson to terminate Johnson (other than
insufficient temporal proximity). And even if we could construe Johnson as
alleging a "cat's paw" argument, whereby White's retaliatory motives could be
imputed to Patterson, *see Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.20
(11th Cir. 1999) (an employer may be liable for the discriminatory intent of an
employee who manipulates decisionmakers into terminating another employee by
providing false information to the decisionmakers that leads to termination),
Johnson's argument would fail because Patterson considered both Johnson's and
White's versions of the events before finalizing Johnson's termination in January
of 2016, *see Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999)
(finding that the cat's paw theory requires "that the decisionmaker followed the
biased recommendation *without independently investigating the complaint* against
the employee" because "[i]n such a case, the recommender is using the
decisionmaker as a mere conduit . . . to give effect to the recommender's
discriminatory animus" (per curiam) (emphasis added)).

17

As a result, we cannot conclude that Patterson merely "rubber-stamped" White's allegedly retaliatory motive.  Patterson chose to believe White's version of the events—a decision that was well within his discretion—and it is not the proper function of this Court to second guess Patterson's decision.  *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our *sole concern* is whether *unlawful discriminatory animus* motivates a challenged employment decision." (emphases added)); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a *discriminatory* reason." (emphasis added)), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc).

Accordingly, the County is entitled to summary judgment regarding Johnson's termination.[11]

V.

We finally address the District Court's ruling that barred Johnson from deposing Carlos Gimenez, the mayor of Miami-Dade County.  We review a district

---

[11] As noted *supra* n.8, Johnson may be able to establish pretext on remand via valid comparators evidence.

court's discovery rulings for an abuse of discretion. *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014).

Johnson argues that the District Court erred in precluding him from deposing Gimenez with respect to Johnson's 42 U.S.C. § 1983 claim. Specifically, Johnson argues that he must be given the opportunity to depose Gimenez to establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), because Gimenez is a final policymaker for the County who allegedly ratified the retaliatory acts of subordinate County employees.

But Johnson did not plead a ratification theory in his complaint, as the District Court correctly noted. And because Johnson did not plead a ratification theory in his complaint, the District Court correctly concluded that he was not entitled to depose Gimenez regarding that theory.

Additionally, Gimenez's deposition testimony is not necessary for the theory of municipal liability that Johnson *did* adequately plead—namely, a widespread practice or custom of racial discrimination or retaliation. All Johnson must prove to prevail on a widespread practice claim is such a "longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they *must have known* about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (emphasis added). In other words, Johnson does not need to prove that Gimenez had *actual* knowledge of constitutional

19

violations to prevail—Johnson must prove only that there were enough violations over a substantial enough period of time to show that Gimenez *must have known* about the violations and, yet, failed to stop them.  This information is accessible from sources other than Gimenez.  Therefore, Gimenez's deposition testimony is unnecessary, and the District Court did not abuse its discretion in denying Johnson the opportunity to depose him.

VI.

Accordingly, the District Court's judgment is

**AFFIRMED in part, VACATED in part, and REMANDED for reconsideration.**

TJOFLAT, Circuit Judge, specially concurring:

I concur fully in the judgment of the Court.  I write separately because I disagree that parallel Title VII and § 1983 claims should be decided based on identical methods of proof, such as the *McDonnell Douglas* framework.

To establish a 42 U.S.C. § 1983 claim against a municipality, "a plaintiff must show: (1) that his *constitutional* rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that *constitutional* right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (emphases added).  However, in this Circuit, when § 1983 and Title VII are used as parallel causes of action to remedy the same underlying discriminatory conduct, both claims are analyzed under the *McDonnell Douglas* framework for the purposes of summary judgment.  In my view, it is improper to use *McDonnell Douglas*'s burden-shifting framework, which utilizes presumptions based on the *statutory* Title VII scheme, to analyze § 1983 claims which are necessarily *constitutional* in nature—even where the § 1983 claim is based on the same misconduct as the Title VII claim.  In other words, *McDonnell Douglas* is properly used only to vindicate the rights protected by the Title VII statutory scheme.  It should not be used outside of that narrow context.  To the extent that cases in our Circuit suggest otherwise, I believe the issue should be reconsidered by this Court *en banc*.

21